IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SLUMBER PARTIES, INC.,        *

    Plaintiff,        *

       v.        *        Civil Action No. RDB-12-00791

SARA COOPER, *et al.*,        *

    Defendants.        *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

Plaintiff Slumber Parties, Inc. ("Plaintiff" or "Slumber Parties"), a leading distributor of romance-enhancing products, has brought this breach of contract action against its former consultants, Defendants Sara Cooper ("Cooper"), Shannon Merrell ("Merrell"), Shannon Oliver ("Oliver"), Jennifer Roy ("Roy"), LaCretia Thompson ("Thompson") and Kathryn Wheeler ("Wheeler") (collectively "Defendants" or "the Consultants"). Essentially, the nine-count Complaint alleges that the Consultants violated the non-solicitation and non-competition provisions included in the Consultant Agreements and the Policies and Procedures Agreements.[1] Plaintiff brings this action in this Court on the basis of diversity jurisdiction under 28 U.S.C. § 1332. Pending before this Court is the Defendants' Motion to Dismiss for lack of jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. The parties' submissions have been reviewed and no hearing is necessary. *See*

---

[1] Only six counts of the Complaint are alleged against Defendant Oliver. She was discharged on May 31, 2011 by Slumber Parties. Pl.'s Compl. ¶ 55, ECF No. 1. As a result, Slumber Parties does not allege that she breached the non-compete clauses of the agreements (Counts III & IV) or a fiduciary duty and a duty of fidelity and loyalty (Count VI).

Local Rule 105.6 (D. Md. 2011).  For the reasons that follow, Defendants Cooper, Merrell, Oliver, Roy, Thompson and Wheeler's Motion to Dismiss (ECF No. 34) is DENIED. Plaintiff's request for leave to amend its Complaint is GRANTED.[2]

## BACKGROUND

In the context of a Rule 12(b)(1) motion to dismiss, "the court may look beyond the pleadings and 'the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003) (citation omitted).

Plaintiff Slumber Parties, Inc. ("Plaintiff" or "Slumber Parties") is a Louisiana corporation with its principal place of business in Baton Rouge, Louisiana.  Pl.'s Proposed Am. Compl. ¶ 5, ECF No. 35-1.  Slumber Parties specializes in the distribution of romance-enhancing products through consultants.  *Id.* ¶¶ 1-15.  These consultants purchase the romance-enhancing products from Slumber Parties and then in turn sell them at in-home parties to third-party clients.  *Id.* ¶¶ 1, 15.  Consultants are also compensated with a percentage of the sales of the new consultants they independently recruit.  *Id.* ¶ 16. "Recruited consultants" are part of the recruiter consultant's "downline." *Id.*  To develop its consultants' businesses, Slumber Parties organizes national training events and workshops. *Id.* ¶ 17-18.  Additionally, Slumber Parties provides "substantial online training resources. . . . [as well as] bookkeeping, ordering, advertising [software] and other business resources." *Id.* ¶¶ 19-20.

---

[2] Plaintiff made this request in its Opposition to Defendants' Motion to Dismiss (ECF No. 35).

Prior to becoming a consultant for Slumber Parties, a contractor must review the terms of the Policies and Procedures Agreement as well as the Consultant Agreement online and select "I Agree" at the bottom of the electronic document. *Id.* ¶ 24. At issue in this case are the Policies and Procedures Agreement and the Consultant Agreement revised in January 2011 (collectively "the 2011 Agreements"). *Id.* The 2011 Agreements both contain non-solicitation provisions effective during the contractual relationship and for a one year period after termination.[3] *Id.* ¶¶ 25-29. They also contain noncompetition provisions prohibiting active Slumber Parties consultants from working for a similar business during the contractual relationship. *Id.* ¶ 30.[4] Additionally, the agreements "entitle Slumber Parties to its attorneys' fees and costs in connection with litigation to enforce its rights under the 2011 Agreements". *Id.* ¶ 35.[5] Furthermore, the Policies and Procedure Agreement allow Slumber Parties to seek an injunction or temporary restraining order upon a consultant's breach of the provisions included in the 2011 Agreements.[6] *Id.* ¶ 27.

---

[3] "I agree for a period of one year after termination from Slumber parties, Inc., I shall not directly or indirectly solicit Consultants or clients of Slumber Parties, Inc. or otherwise engage directly or indirectly on my own behalf or on the behalf of any other person or entity, to induce or hire any Consultant or encourage Consultant to terminate or alter her business relationship with Slumber Parties, Inc." 2011 Policies and Procesdures ¶ 4.1, Pl.'s Compl. Ex. A at 5, ECF No. 2-1 (sealed) [hereinafter Policies and Procedures]. "The Contractor will not, during the relationship provided by this Agreement and for a period of one year from termination of the relationship . . . (2) solicit any Contractor of the Company to become a sales representative, dealer Consultant, or contractor for the Contractor for a business similar to the Company's business; or (3) solicit any client of the SLUMBER PARTIES network of contractors or any person who is or was a client of the Contractor . . ." 2011 Consultant Agreement ¶ 11, Pl.'s Compl. Ex. A at 36, ECF No. 2-1 (sealed) [hereinafter Consultant Agreement].

[4] "I will not engage in selling or promoting the sale of conflicting or competing products carried by Slumber parties. . ." Policies and Procedures ¶ 4.1. "The Contractor will not, during the relationship provided by this Agreement and for a period of one year from termination of the relationship . . . (1) engage in a business similar to the Company's business, including owning, operating . . . or otherwise working for or being employed by such a business; . . ." Consultant Agreement ¶ 11.

[5] *See* Consultant Agreement ¶ 12 and Policies and Procedures ¶ 4.9.

[6] *See* Policies and Procedures ¶ 4.9.

Defendants Cooper, Merrell, Oliver, Roy, Thompson and Wheeler are each residents of Maryland. *Id.* ¶¶ 6-11. Defendants Cooper, Merrell, Oliver, Roy and Wheeler worked for Slumber Parties for at least three years. *Id.* ¶ 36. Defendant Thompson worked for Slumber Parties for over a year. *Id.* Defendant Slumber Parties terminated Defendant Oliver's consultant relationship on May 31, 2011. *Id* ¶ 55. According to Slumber Parties, while serving as consultants, each Defendant "sold substantial quantities of Slumber Parties products." *Id.* ¶ 37. "In 2011 alone, Defendants collectively" were responsible for $170,000 in sales by Slumber Parties. *Id.* ¶ 38. Moreover, Defendants had multiple consultants in their downline. *Id.* ¶ 39.

According to Slumber Parties, Defendants Cooper, Merrell, Roy, Thompson and Wheeler "became affiliated with Pure Romance, Inc." during the Fall of 2011 without terminating their relationship with Slumber Parties. *Id.* ¶¶ 40-45. Slumber Parties alleges that Pure Romance, a Ohio corporation, is also a romance-enhancing products distributor functioning according to a similar business model. *Id.* ¶ 41. Specifically, Slumber Parties claims that Pure Romance sells similar products through in-home parties, enters into similar agreements with its consultants which include non-solicitation provisions, and also compensates consultants with a percentage of sales made by their "downline" consultants. *Id.* ¶¶ 41-43. Slumber Parties further alleges that Pure Romance incentivizes the solicitation of Slumber Parties consultants by offering Pure Romance consultants an additional bonus for each new Slumber Parties consultant recruit. *Id.* ¶ 44.

Slumber Parties terminated its relationship with Defendants Cooper, Merrell, Roy, Thompson and Wheeler upon discovering their involvement with Pure Romance. *Id.* ¶ 47. After conducting an extensive investigation into these Defendants' conduct, Slumber parties discovered that they had solicited a number of Slumber Parties consultants to join Pure Romance. *Id.* ¶ 51. Moreover, Slumber Parties "determined that many of the Slumber Parties consultants solicited by these Defendants . . . had stopped purchasing Slumber Parties products." *Id.* Some of the solicited consultants were part of the Defendants' downlines. *Id.* ¶ 52. Slumber Parties alleges that at least forty-four of Defendants Cooper, Merrell, Roy and Wheeler's downline consultants joined Pure Romance. *Id.* Defendant Oliver is one of the individuals recruited by Defendants Cooper, Merrel, Roy and Wheeler. *Id.* ¶ 55. Slumber Parties claims that she became affiliated with Pure Romance prior to January 13, 2012 while still within the one-year non-solicitation period. *Id.* ¶ 55. Defendant Oliver allegedly solicited at least two of her Slumber Parties downline consultants who in turn joined Pure Romance. *Id.* ¶¶ 55-56.

Slumber Parties alleges that Defendants continue to solicit Slumber Parties consultants to join Pure Romance and profit from the new recruits' presence in their downline. *Id.* ¶ 59. Slumber Parties also claims that it "has lost sales that it otherwise would have made to the solicited consultants." *Id.* Moreover, Slumber Parties alleges that the Defendants "continue to represent themselves as being affiliated with Slumber Parties by misappropriating Slumber Parties' marks." *Id.* ¶¶ 61-69. As a result, Slumber Parties brought this breach of contract action against the Defendants on March 13, 2012. The Complaint alleges (a) breach of the non-solicitation provision of the 2011 Agreements

(Counts I & II); (b) breach of the noncompetition provision of the 2011 Agreements against all Defendants except Defendant Oliver (Counts III & IV); (c) breach of contract for failure to terminate the use of Slumber Parties' marks upon the termination of the contractual relationship (Count V); (d) breach of fiduciary duty and the duty of fidelity and loyalty against all Defendants except Defendant Oliver (Count VI); (e) violation of the Louisiana Unfair Trade Practices Act, Louisiana R.S. § 51:1401, *et seq.* (Count VII). The Complaint also requests the payment by Defendants of attorneys' fees and litigation costs (Count VIII) as well as injunctive relief (Count IX).

## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction challenges a court's authority to hear the matter brought by a complaint. *See Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). This challenge under Rule 12(b)(1) may proceed either as a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted). "[T]he court may look beyond the pleadings and 'the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003) (citation omitted). The court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also*

*Sharafeldin v. Maryland Dept. of Public Safety & Correctional Services*, 94 F. Supp. 2d 680, 684-85 (D. Md. 2000).  "The district court should grant the Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."  *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1998) (quoting *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

<u>ANALYSIS</u>

## I.   <u>Leave to Amend</u>

In its Response in Opposition to Defendant's Motion to Dismiss (ECF No. 35), Plaintiff requested leave to file an Amended Complaint.  Federal Rule of Civil Procedure 15(a), provides that leave to amend "shall be freely given when justice so requires," and the general rule is that Rule 15(a) be liberally construed.  *See Forman v. Davis,* 371 U.S. 178, 182 (1962).  Specifically, the Supreme Court observed that "[i]n the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive . . . undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. - the leave sought should, as the rules require, be 'freely given.' "  *Id.* at 182.  Accordingly, leave should be denied only when amending the pleading would prejudice the opposing party, reward bad faith on the part of the moving party, or would amount to futility.  *Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008).  This Court has recently stated that "[a] review for futility is not an evaluation of the underlying merits of the case." *Next Generation Grp. v. Sylvan Learning Ctrs., LLC.*, 2012 WL 37397, at *3 (D. Md. 2012); *see also Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980) ("Unless a proposed amendment may clearly be seen to be futile because of substantive or procedural

considerations, . . . conjecture about the merits of the litigation should not enter into the decision whether to allow amendment."). At minimum, granting leave to amend is warranted when "at least some [of the requesting party's] claims are not futile." *Next Generation Grp.*, 2012 WL 37397 at *3. In this case, the original Complaint and the Proposed Amended complaint differ ever so slightly but still contribute to supplementing Plaintiff's claims against Defendants. Granting Plaintiff's motion for leave to file the Amended Complaint would neither prejudice the Defendants, nor reward bad faith on the part of the Plaintiff, or amount to futility. Therefore, Plaintiff's request for leave to file the Amended Complaint is GRANTED.

## II.   <u>Motion to Dimiss</u>

It is important to note that when a plaintiff files an amended complaint a defendant's previous motion to dismiss is not automatically rendered moot. *See Contreras v. Thor Norfolk Hotel, L.L.C.*, 292 F. Supp. 2d 798, 800 n. 1 (E. D. Va.2003); 6 ARTHUR R. MILLER & MARY K. KANE, FEDERAL PRACTICE AND PROCEDURE § 1476 (3d ed. 2010) ("[A] defendant should not be required to file a new motion to dismiss simply because an amended pleading was introduced while [its] motion was pending. If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading"). Analogously, the United States Court of Appeals for the Fourth Circuit has noted that the Court has discretion to consider a pending appeal "as being addressed to the . . . Amended Complaint if that complaint contain[s] the same defect raised in the . . . appeal." *Ohio River Valley Environ. Coalition, Inc. v. Timmermeyer*, 66 Fed. Appx. 468, 472 n. 4 (4th Cir. 2003) (*per curiam*) (unpublished) (citing 6 CHARLES ALAN

WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1476 (2d ed. 1990 & Supp. 2003)). Thus, if Plaintiff's Amended Complaint suffers from the same defect as its original Complaint, then Defendants' Motion to Dismiss is not moot. Because Defendants contend in their Reply that Plaintiff's Amended Complaint does not cure the lack of subject matter jurisdiction issue, Defendants' Motion to Dismiss is not moot.

In their Motion to Dismiss, Defendants argue that this Court lacks subject matter jurisdiction over Plaintiff's claims because the Complaint fails to satisfy the amount in controversy requirement for the exercise of diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). Specifically, Defendants argue that Plaintiff only generally alleges that the amount in controversy is satisfied as to each Defendant. Additionally, Defendants state that the Complaint only alleges that they "collectively purchased a total of $170,000 in product from the Company." Defs.' Mot to Dismiss at 3, ECF No. 34. Furthermore, Defendant Thompson claims in her declaration that she only individually purchased $4,272.00 in product from Slumber Parties and that her downline purchased products for a total amount inferior to $25,000. Thompson Decl. ¶ 5, ECF No. 36-1.

The jurisdiction of the federal courts is limited. Federal jurisdiction is available only when a "federal question" is presented or where the parties are of diverse citizenship and the amount in controversy "exceeds the sum or value of $75,000, exclusive of interests and costs." 28 U.S.C. § 1332; *see also* U.S. Const. Art. 3 § 2 & 28 U.S.C. § 1331. The burden of establishing diversity jurisdiction rests with the party seeking to litigate in federal court. *See Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999). "[D]iversity jurisdiction is to be assessed at the time the lawsuit is commenced." *Freeport-McMoRan, Inc. v. K N Energy, Inc.*,

498 U.S. 426, 429 (1991).   As such, the amount in controversy is determined from the allegations or prayer of the complaint.  *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938); *see also Wiggins v. N. Am. Equitable Life Assurance Co.*, 644 F.2d 1014, 1017 (4th Cir. 1981) ("Ordinarily the jurisdictional amount is determined by the amount of the plaintiff's original claim, provided that the claim is made in good faith.").   "[A] general [conclusory] allegation, when not traversed, that . . . the minimum jurisdictional limit" is met usually suffices.  *Gibbs v. Buck*, 307 U.S. 66, 72 (1939).  This Court has also held that "courts defer to the allegations in the complaint when plaintiffs file in federal court in the first instance."[7]  *Impact Office Products, LLC v. Krug*, AW-10-01864, 2010 WL 4296344, at * 2 (D. Md. Oct. 29, 2010).

It is well settled in the Fourth Circuit that the test for determining the amount in controversy in a diversity proceeding is the "either-viewpoint rule" which is concerned with "the pecuniary result to either party which [a] judgment would produce."  *Dixon v. Edwards*, 290 F.3d 699, 710 (4th Cir. 2002) (citing *Gov't Employees Ins. Co. v. Lally*, 327 F.2d 568, 569 (4th Cir. 1964)); *see also Gonzalez v. Fairgale Props. Co.*, 241 F. Supp. 2d 512, 517 (D. Md. 2002). Under the "either-viewpoint" rule, the amount-in-controversy requirement is satisfied if either the gain to the plaintiff or the cost to the defendant is greater than $75,000.  *See Gonzalez*, 241 F. Supp. 2d at 517.  Similarly, the value of an injunction for amount in controversy purposes is determined "by reference to the larger of two figures: the

---

[7] Defendants argue that "[a] speculative argument regarding the potential value of the award is insufficient." *Delph v. Allstate Home Mortgage, Inc.*, 478 F. Supp. 2d 852, 855 (D. Md. 2007)(citation omitted).   However, this Court's subsequent decision in *Impact Office Products, LLC v. Krug* clearly explained that this standard only applied to removal cases.  AW-10-01864, 2010 WL 4296344 at * 2 (D. Md. Oct. 29, 2010).

injunction's worth to the plaintiff or its cost to the defendant." *JTH Tax, Inc. v. Frashier*, 624

F.3d 635, 639 (4th Cir. 2010) (citing *Dixon v. Edwards*, 290 F.3d 699, 710 (4th Cir. 2002).

Where the amount in controversy is challenged, the Fourth Circuit has set forth a test

for district courts to follow:

> First, the court should look to the face of the complaint itself to determine
> whether it is a *legal certainty* that plaintiff's claims do not reach the required
> amount.    Unless the claim for an amount over the jurisdictional
> prerequisite is made in bad faith, or unless it is plain from the complaint
> that an amount less than the jurisdictional amount is all that is at issue, the
> district court has jurisdiction over the case. . . . Second, if some event
> subsequent to the complaint reduces the amount in controversy, . . . the
> court must then decide in its discretion whether to retain jurisdiction over
> the remainder of the case.

*Shanaghan v. Cahill*, 58 F.3d 106, 112 (4th Cir. 1995) (internal citations omitted)(emphasis

added).[8]  When the complaint provides an amount-in-controversy, defendants attempting to

dismiss "shoulder a heavy burden." *JTH Tax, Inc.*, 624 F.3d at 638.  "If the plaintiff claims a

sum sufficient to satisfy the statutory requirement, a federal court may dismiss only if it is

apparent, *to a legal certainty,* that the plaintiff cannot recover the amount claimed." *Id.*

(emphasis in original)(quotation marks omitted).   In other words, "a defendant seeking

dismissal based on the amount in controversy must show that it is legally impossible for the

plaintiff to recover the jurisdictional amount." *VCA Cenvet, Inc. v. Chadwell Animal Hosp.,*

---

[8] Where the second step of the analysis is concerned, the district court should consider "(1) an evaluation of
the convenience and fairness to both parties if the case is kept or dismissed, taking into consideration the
interests of judicial economy; (2) whether the amount claimed in the complaint was made in good faith, or
whether the plaintiff was consciously relying on flimsy grounds to file in federal court; (3) whether the state
statute of limitations would bar refiling the action in state court if dismissed; (4) the amount of time and
energy that the federal court already has expended in connection with the case, and whether it might be more
efficient to just keep it; (5) whether the case presents some significant issue of state law best decided in state
court." *Peiffer v. King Pontiac Buick GMC, Inc.*, 105 F. Supp. 2d 470. 472-73 (D. Md. 2000) (citing *Shanaghan v.
Cahill*, 58 F.3d 106, 112 (4th Cir. 1995).

*LLC*, JKB-11-1763, 2011 WL 6257190, at * 1 (D. Md. Nov. 29, 2011) (citing *Wiggins v. N. Am. Equitable Life Assurance Co.*, 644 F.2d 1014, 1017 (4th Cir. 1981)).

A single plaintiff's claims against several defendants can be aggregated for jurisdictional purposes if the defendants are jointly liable to the plaintiff on each claim. *Sovereign Camp Woodmen v. O'Neil*, 266 U.S. 292, 297-298 (1924). However, where the liability alleged is separate, rather than joint, aggregation is not permitted even if the claims arise out of the same transaction. *See Ex Parte Phoenix In. Co.*, 117 U.S. 167, 369 (1886). The Fourth Circuit similarly held that "[a]ggregation is keyed to the type of recovery, not the factual relatedness of the claims." *Liberty Mutual Fire Insurance Co. v. Hayes*, 122 F.3d 1061 (4th Cir. 1997). In that case, the court denied a plaintiff's ability to aggregate claims against multiple insurers were he had not stated a joint and several claim against them. *See id.* As far as alleging joint and several claims are concerned, the Supreme Court has determined that allegations of conspiracy in the complaint "tie the defendants together" for liability purposes so that aggregation of claims is allowed. *Sovereign Camp Woodmen,* 266 U.S. at 297-298.

In this case, Plaintiff does not allege that the Defendants are jointly and severally liable. However, Plaintiff's Complaint alleges that "the amount in controversy as to each Defendant *exceeds* $75,000." Pl.'s Compl. ¶ 12 (emphasis added). Specifically, Plaintiff claims that "[i]n 2011 alone, Defendants collectively purchased from Slumber Parties *more than $170,000* in Slumber Parties products to sell to Slumber Parties clients." *Id.* ¶ 38 (emphasis added). Moreover, Plaintiff claims that the Defendants solicited a number of Slumber Parties consultants to join Pure Romance. Specifically, Plaintiff alleges that at least forty-four of Defendants Cooper, Merrell, Roy and Wheeler's downline consultants joined

Pure Romance and in turn stopped purchasing Slumber Parties products. *Id.* ¶ 51. Additionally, Plaintiff claims that these Defendants solicited Defendant Oliver who in turn solicited at least two of her downline consultants who each joined Pure Romance. *Id.* ¶¶ 55-56. Furthermore, Plaintiff seeks "direct, compensatory, and consequential damages," resulting from damages related to *inter alia* "the loss of consultants and clients, and damage to its goodwill and reputation." *Id.* ¶¶ 4, 77. Plaintiff also requests preliminary and permanent injunctive relief against Defendants; the value of which is determined by either the worth of the injunctive relief to Plaintiff or its costs to Defendants whichever is greater. Pl.'s Compl., Prayer of Relief ¶ 1; *see also. JTH Tax, Inc.*, 624 F.3d at 639. Accordingly, although Plaintiff does not state an exact figure, it has made a "general allegation" that the jurisdictional amount requirement is met as to each Defendant. *Gibbs v. Buck*, 307 U.S. 66, 72 (1939). In response, Defendants have failed to meet their heavy burden under *JTH Tax, Inc. v. Fashier* to demonstrate that it is legally impossible for Plaintiff to recover. Therefore, this Court has subject matter jurisdiction over this action and Defendants' Motion to Dismiss pursuant to Rule 12(b)(1) is DENIED.

<u>CONCLUSION</u>

For the reasons stated above, Defendants Cooper, Merrell, Oliver, Roy, Thompson, and Wheeler's Motion to Dismiss (ECF No. 34) is DENIED.  Plaintiff's request for leave to file an Amended Complaint contained in its Opposition to Defendants' Motion to Dismiss (ECF No. 35) is GRANTED.

A separate Order follows.

Dated:        July 16, 2012              /s/_____

                                                        Richard D. Bennett
                                                         United States District Judge